EVANS, APPELLANT, *v.* DAYTON NEWSPAPERS, INC. ET AL., APPELLEES.

(No. 10983—Decided April 20, 1989.)

*Walter C. Evans, pro se.*
*Robert E. Portune* and *Thomas H. Pyper,* for defendants-appellees.

WOLFF, P.J. Walter C. Evans appeals from a judgment, entered pursuant to Civ. R. 12(B)(6), dismissing his amended complaint against appellees Dayton Newspapers, Inc. and its employee John Erickson. Evans claims that the trial court erred in dismissing his amended complaint.

Before considering the substantive aspect of this case, we must first consider two procedural issues.

Evans contends that the trial court was required to state findings of fact

and conclusions of law. This contention is incorrect. Civ. R. 52 is confined to nonjury trials. Furthermore, the obligation to state findings of fact and conclusions of law is triggered by a party's request. Evans made no such request of the trial court.

Evans also contends that the decision of the trial court is void because it was entered pursuant to a pretrial order entered by a trial judge against whom a motion to disqualify was pending. The decision was rendered April 5, 1988 by a visiting judge who was assigned to the case by an entry of the Supreme Court, filed in the trial court March 22, 1988. The decision sustained appellees' motion to dismiss and directed them to prepare the final judgment.

On January 19, 1988, Evans filed an affidavit and motion for disqualification of the original trial judge with the clerk of the trial court. The original trial judge, by entry of January 25, 1988, scheduled a pretrial conference for February 12, 1988, on Evans' motion to disqualify and appellees' motion to dismiss. On January 26, Evans filed the affidavit and motion for disqualification with the Supreme Court. A January 29, 1988 letter from the Supreme Court to the clerk of the trial court, a copy of which was sent to the original trial judge, indicated that the original trial judge "should not proceed with the case until the Chief Justice has passed upon the issue of disqualification." The original trial judge held the previously scheduled pretrial conference on February 12, 1988 and entered a pretrial order February 23, 1988. The pretrial order scheduled a trial during the week of September 19, 1988 before a visiting judge. A copy of the pretrial order was sent to the Supreme Court. On March 16, 1988, the original trial judge entered a modification of his pretrial order, establishing March 21, 1988 as Evans' deadline for responding to appellees' motion to dismiss, which had been pending since January 14, 1988. The March 16, 1988 order also provided that the motion would be considered at issue April 4, 1988. Evans did not respond to the motion to dismiss until April 6, 1988, the day after the visiting judge had rendered his decision.

We find no prejudice to Evans in the foregoing events. The adverse ruling on appellees' motion to dismiss was made by the visiting judge. The original trial judge, informed by the Supreme Court that he "should not proceed," did no more than fix deadlines for the orderly disposition of the case. His being informed that he should not proceed did not render his pretrial orders void, or the visiting judge's decision, rendered in accordance with the timetable established by the pretrial orders, void. While the original trial judge, upon the filing of Evans' motion and affidavit of disqualification in the Supreme Court, was divested of "authority to determine the cause or hear any matter affecting the substantial rights of the parties," *Tumbleson* v. *Noble* (1959), 109 Ohio App. 242, at 244, 10 O.O. 2d 470, at 472, 164 N.E. 2d 808, at 810, he was not divested of authority to act in a ministerial capacity. *Id.* at 245, 10 O.O. 2d at 472, 164 N.E. 2d at 811. See, also, *Cuyahoga Cty. Bd. of Mental Retardation* v. *Assn. of Cuyahoga Cty. Teachers of the Trainable Retarded* (1975), 47 Ohio App. 2d 28, at 35-38, 1 O.O. 3d 168, at 172-174, 351 N.E. 2d 777, at 783-785. The February 12, 1988 pretrial conference and the two following pretrial orders were no more than ministerial actions.

Turning now to the substantive question in the case, the issue presented is whether Evans' amended complaint stated a claim upon which relief can be granted. Civ. R. 12(B)(6).

Appellees' substantive arguments to the trial court were that Evans'

amended complaint, to the extent that it stated a claim for libel, was barred by the statute of limitations and, to the extent that it stated a claim for "false light" invasion of privacy, it stated a claim not recognized by Ohio law.

On appeal, Evans acknowledges that any claim of libel was time-barred and that Ohio does not recognize "false light" invasion of privacy. He contends, however, that he has stated a claim for invasion of privacy which is recognized by Ohio law.

Paragraph two of the syllabus of *Housh* v. *Peth* (1956), 165 Ohio St. 35, 59 O.O. 60, 133 N.E. 2d 340, describes the three types of conduct giving rise to claims for invasion of privacy recognized in this state:

"An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

Although Evans argues that he had stated claims within each of the three categories of conduct recognized in Ohio as actionable, we agree with appellees, particularly in light of Judge Norris' discussion in *Killilea* v. *Sears, Roebuck & Co.* (1985), 27 Ohio App. 3d 163, at 166-167, 27 OBR 196, at 199-200, 499 N.E. 2d 1291, at 1294-1295, that if Evans has successfully stated a cognizable claim, it is of the " 'publicity' tort." *Id.* at 166, 27 OBR at 199, 499 N.E. 2d at 1294.

*Killilea,* as it discusses the publicity tort of invasion of privacy, provides:

"In order for plaintiff to state a claim for which relief can be granted under this cause of action:

"(1) There must be publicity; the disclosure must be of a public nature, not private. 'Publicity' means communicating the matter to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge as opposed to 'publication' as that term of art is used in connection with liability for defamation as meaning any communication by the defendant to a third person.

"(2) The facts disclosed must be those concerning the private life of an individual, not his public life. There is no liability when the defendant merely gives further publicity to information about the plaintiff that is already public, such as matters of public record about his birth or marriage date, or matters that the plaintiff leaves open to the public eye, such as kissing his spouse in public.

"(3) The matter publicized must be one which would be highly offensive and objectionable to a reasonable person of ordinary sensibilities.

"(4) The publication must have been made intentionally, not negligently. *McCormick* v. *Haley* (1973), 37 Ohio App. 2d 73 [66 O.O. 2d 132].

"(5) The matter publicized must not be a legitimate concern to the public. A newspaper's publicizing 'legitimate news' ordinarily will not be actionable." *Id.* at 166-167, 27 OBR at 199-200, 499 N.E. 2d at 1294-1295.

Appellees concede that Evans' amended complaint satisfies the first four *Killilea* factors, but contend that it is fatally deficient as to the fifth factor because there is no allegation that the "matter publicized" by appellees is not "a legitimate concern to the public." Furthermore, appellees contend that Evans has entered the public arena, thereby making his business affairs a proper subject of fair inquiry and publication.

Evans' allegations as to publication by appellees are found at paragraphs 4 and 5 of the amended complaint:

"(4) Defendant Dayton News-

papers, Inc., by its duly employed and/or authorized agents and representatives without Plaintiff's prior knowledge or consent printed on or about December 17, 1985 news articles regarding said Plaintiff's private financial affairs, private business affairs, private professional affairs, and described true and false private and/or unsavory incidents in the life of the Plaintiff.

"(5) Defendant Dayton Newspapers, Inc., by its duly authorized agents, personnel and employees, without Plaintiff's prior knowledge or consent unlawfully obtained and printed a law enforcement 'mug-shot' of the Plaintiff in its publication and circulated said printed publication to the general public"

Appellees argue from 3 Restatement of the Law 2d, Torts (1977) 389, Section 652D, Comment *f,* that Evans became an involuntary public figure by virtue of having his mugshot taken, and can therefore claim no privacy interest in that photograph. He having thus become a public figure, appellees continue, they may, according to Comment *h* of the same Restatement section, publish information that they could not publish were Evans not a public figure.

In our opinion, the amended complaint is clearly susceptible to an inference that Evans did not regard the matters published by appellees to be of legitimate concern to the public. Such being the case, from the four corners of the amended complaint, the trial court could not have concluded as a matter of law that Evans could prove no set of facts entitling him to recovery. *O'Brien* v. *Univ. Community Tenants Union* (1975), 42 Ohio St. 2d 242, 71 O.O. 2d 223, 327 N.E. 2d 753.

Comment *h* of the Restatement of the Law 2d, Torts (1977) 391, Section 652D states:

"*h. Private facts.* Permissible publicity to information concerning either voluntary or involuntary public figures is not limited to the particular events that arouse the interest of the public. That interest, once aroused by the event, may legitimately extend, *to some reasonable degree,* to further information concerning the individual and to facts about him, which are not public and which, in the case of one who had not become a public figure, would be regarded as an invasion of his purely private life. Thus, the life history of one accused of murder, together with such heretofore private facts as may throw some light upon what kind of person he is, his possible guilt or innocence, or his reasons for committing the crime, are a matter of legitimate public interest * * *." (Emphasis added.)

Assuming only for the sake of discussion that Evans has no privacy interest in his mugshot and has acquired "involuntary public person" status, that status does not necessarily legitimize appellees' publication of everything that might be embraced by Evans' amended complaint, paragraph 4. By its terms, Comment *h* contemplates the rule of reason.

It may well be that pretrial discovery will generate information that clearly demonstrates that Evans cannot complain about the material published about him, thereby giving appellees the basis for a meritorious motion for summary judgment. Without more, however, the amended complaint did not so demonstrate, and the trial court erred in dismissing Evans' complaint.

The judgment of dismissal is reversed. This case is remanded for further proceedings consistent with this opinion.

*Judgment reversed.*

WILSON and BROGAN, JJ., concur.