IN RE DISQUALIFICATION OF CIRIGLIANO.

STATE *v.* ROSS.

[Cite as *In re Disqualification of Cirigliano,*
105 Ohio St.3d 1223, 2004-Ohio-7352.]

(No. 04–AP–029—Decided April 29, 2004.)

MOYER, C.J.

{¶ 1} Cuyahoga County Assistant Prosecuting Attorneys John R. Mitchell and Matthew E. Meyer have filed an affidavit with the Clerk of this court under R.C. 2701.03 seeking the disqualification of Judge Joseph Cirigliano from acting on any further proceedings in *State of Ohio v. Denny F. Ross,* case No. CR–1999–05–1098–A in the Court of Common Pleas of Summit County.

{¶ 2} Judge Cirigliano has responded to the affidavit by filing a motion asking that the affidavit be dismissed. According to Judge Cirigliano, the circumstances surrounding the appointment of a special prosecutor for the Ross case three years ago now deprive the assistant prosecuting attorneys of any legal authority to appear on behalf of the government in this case. The affidavit should therefore be dismissed, the judge claims.

{¶ 3} For the reasons explained below, I now deny the judge's motion to dismiss.

### Case Facts

{¶ 4} The sequence and timing of various events are relevant to the issues that Judge Cirigliano raises in his motion to dismiss, so a brief discussion of key events follows.

{¶ 5} In the case before Judge Cirigliano, Denny Ross faces various felony charges in connection with the rape and murder of an Akron woman. Ross was tried on the charges before a jury in Summit County in late 2000. Judge Jane Bond presided. While the jury was deliberating its verdicts, Judge Bond declared a mistrial amid rumors of juror misconduct.

{¶ 6} Following that first trial, Ross's defense counsel filed an affidavit of disqualification seeking the removal of Judge Bond from the case. On January 17, 2001, I concluded that Judge Bond should indeed step aside from the case because of the strong possibility that she might be called as a witness to testify about the actions that she took once she learned about the possible juror misconduct during the trial. *In re Disqualification of Bond* (2001), 94 Ohio St.3d 1221, 763 N.E.2d 593.

{¶ 7} On January 26, 2001, Judge John R. Adams—who at the time was serving as the administrative judge on the Summit County Court of Common Pleas—asked Stark County Common Pleas Judge Richard D. Reinbold Jr. to take over the case. That same day, Judge Adams wrote to this court, suggesting that Judge Reinbold be appointed to the case and explaining that a visiting judge was needed to hear the case "based on the recusal of all of the Summit County Common Pleas judges due to their colleague, Judge Jane Bond, being a potential witness in this case."

{¶ 8} On February 2, 2001, I appointed Judge Reinbold to hear the Ross case in Summit County, relying on my authority under Section 5(A)(3), Article IV of

the Ohio Constitution, which gives me the power to assign judges to serve temporarily on courts other than their own when needed.

{¶ 9} On February 21, 2001, the then newly elected Summit County Prosecuting Attorney, Sherri Bevan Walsh, filed a motion in the Ross case asking that the trial court appoint a special prosecutor for the retrial because she and her entire office had a conflict of interest in the case.

{¶ 10} On March 5, 2001, Judge Reinbold wrote a letter to me requesting that he be permitted to resign his appointment in the Ross case. My office received the letter on March 7, 2001. In the letter, Judge Reinbold explained that the case appeared to be more procedurally complex and would likely be more time-consuming than he had first anticipated, and he was concerned that he would not be able to devote an appropriate amount of time to it, given his own heavy caseload in Stark County. Judge Reinbold indicated in the letter that he had conveyed the same sentiments to Administrative Judge Adams on February 28, 2001 and that Judge Adams had agreed then to request a new visiting judge to hear the case. Finally, the letter indicated that Judge Adams was also searching for a special prosecutor to represent the government in the case.

{¶ 11} On March 16, 2001, the judges of the Summit County Common Pleas Court, General Division, granted Prosecuting Attorney Walsh's request that a special prosecutor be appointed to represent the government in the Ross case, and the judges appointed Cuyahoga County Prosecuting Attorney William Mason to the post.

{¶ 12} On March 23, 2001, I formally withdrew the assignment of the Ross case from Judge Reinbold, and I appointed Judge Cirigliano to handle the case. Judge Cirigliano has presided over all trial court proceedings in the case during the past three years.

{¶ 13} On March 15, 2004, Assistant Prosecuting Attorneys Mitchell and Meyer from Special Prosecuting Attorney Mason's office filed the affidavit of disqualification here, alleging that Judge Cirigliano should now be removed from the case because he has exhibited bias against the government and cannot preside fairly and impartially any longer.

{¶ 14} On April 1, Judge Cirigliano filed a motion to dismiss, raising the three arguments that I now resolve as follows.

### First Issue: The Selection of a Special Prosecutor by the Summit County Judges

{¶ 15} Judge Cirigliano argues first that the appointment of a special prosecutor to the Ross case by the general-division common pleas judges in Summit County was improper because the judges who made the appointment had no authority to do so. The key question that Judge Cirigliano presents is this: Did

Judge Adams and his Summit County colleagues have the authority to appoint a special prosecutor for the Ross case, given that they had recused themselves and given that Judge Reinbold was still at that point the assigned judge on the case (though he had by then asked to be permitted to withdraw)?

{¶ 16} Court rules and past court decisions provide limited guidance on the issue. To be sure, Sup.R. 4(B) states that an administrative judge has "full responsibility and control over the administration, docket, and calendar of the court." And certainly, "[c]ourts of common pleas possess inherent power to appoint special prosecutors in criminal matters." *State ex rel. Master v. Cleveland* (1996), 75 Ohio St.3d 23, 27, 661 N.E.2d 180. See, also, *State v. Bunyan* (1988), 51 Ohio App.3d 190, 192, 555 N.E.2d 980 (where the duly elected prosecutor felt unable to carry out his prosecutorial duties against the defendant, the court of common pleas possessed the inherent power to appoint a special prosecutor).

{¶ 17} Beyond those well-settled principles, the validity of the appointment of Prosecuting Attorney Mason as special prosecutor in the Ross case turns primarily on the sequence of events that occurred in early 2001. Having examined the existing record of those events, I conclude that the Summit County judges' appointment of Prosecuting Attorney Mason as a special prosecutor for the Ross case on March 16, 2001 was and is valid.

{¶ 18} Judge Reinbold was undeniably the assigned judge on the Ross case at the time of the Mason appointment, and the letter that Judge Reinbold sent to me on March 5, 2001, provides very helpful insights into the judge's views about the appointment issue. (In fairness to Judge Cirigliano, he may not be aware of that letter's contents, and he has probably never seen it.)

{¶ 19} That letter from Judge Reinbold reflects his assent to the search that Judge Adams was then conducting to find a special prosecutor for the case. As Judge Reinbold said in the letter, he had recently concluded after meeting with attorneys for both sides that it was "quite clear that a new prosecutor was mandatory." Judge Reinbold added, "We so advised Judge Adams, and he has attempted since then to enlist a special prosecutor from a number of different counties."

{¶ 20} From that language, it appears that Judge Reinbold—even while still assigned to the case—felt that Judge Adams as administrative judge ought to be the person to search for a special prosecutor. The newly elected Summit County Prosecuting Attorney had asked that a special prosecutor be appointed, defense counsel had not objected to the prosecutor's request, and Judge Reinbold evidently believed that Judge Adams, as administrative judge, should handle the job of locating a special prosecutor while Judge Reinbold continued to sort out the disputed legal issues that divided the parties. Perhaps Judge Reinbold

wanted to avoid any appearance of impropriety by leaving to another judge or group of judges the duty of selecting new counsel for the government while the case was pending before him. In any event, Judge Reinbold appears to have concluded that a special prosecutor was needed, and he then left to Judge Adams the task of selecting that prosecutor.

{¶ 21} Though Administrative Judge Adams and his Summit County colleagues had voluntarily stepped aside from the case, and though Judge Reinbold had not formally been removed from the case on March 16, 2001, there is every reason to assume that Judge Reinbold welcomed the Summit County judges' order appointing a special prosecutor on that day. Neither he, nor defense counsel, nor Prosecuting Attorney Walsh raised any questions about the validity of the March 16, 2001 appointment of Prosecuting Attorney Mason as special prosecutor, and none of them appear to have raised any concerns about the appointment since then.

{¶ 22} As for Judge Cirigliano, he too appears to have accepted the validity of the appointment for more than three years after it occurred. The order granting the motion and appointing William Mason as special prosecutor was part of the case file when Judge Cirigliano took over the case. If he had any concerns about the ruling or its validity, he could have raised them then, vacated the order, and issued his own ruling on Prosecuting Attorney Walsh's motion. He did not do so.

{¶ 23} Ohio's affidavit-of-disqualification statute provides some guidance on the question. See R.C. 2701.03. To be sure, no affidavit of disqualification had been filed against Judge Adams or his Summit County colleagues (aside from Judge Bond). Still, all of those judges chose to step aside from the Ross case in 2001 in much the way that judges are required to do whenever such an affidavit of disqualification is filed against them. R.C. 2701.03 provides that while an affidavit of disqualification is pending before the Chief Justice, the affected judge is still entitled to "determine a matter that does not affect a substantive right of any of the parties." R.C. 2701.03(D)(3). In a case applying that provision, one court has said that a judge against whom an affidavit of disqualification was pending could still "act in a ministerial capacity" and therefore did not act improperly when he held a pretrial conference and scheduled a trial before a visiting judge. *Evans v. Dayton Newspapers, Inc.* (1989), 57 Ohio App.3d 57, 58, 566 N.E.2d 704.

{¶ 24} In this case, Judge Adams and the other Summit County judges who had voluntarily recused themselves took it upon themselves—at the request of Judge Reinbold—to resolve an issue that neither party to the case appears to have viewed as one that affected the parties' substantive rights. The judges' appointment of Prosecuting Attorney Mason as special prosecutor—at least where Prosecuting Attorney Walsh's February 21, 2001 motion was unopposed,

and where Judge Reinbold agreed with it and had asked Judge Adams to select a special prosecutor—can rightly be described as a permissible ministerial action. That act of appointing William Mason as special prosecutor for the retrial of the case neither undercut Judge Reinbold's authority as the assigned judge nor compromised the Summit County judges' decision to leave to a visiting judge the task of deciding any substantive legal disputes between the parties after Judge Bond was disqualified.

{¶ 25} While the Summit County judges' act of appointing a special prosecutor was proper in these circumstances, the fact that the parties have for more than three years relied on the validity of that appointment is itself important. A prompt objection to the appointment was essential if that appointment was to be undone. In analogous circumstances—involving an administrative judge's allegedly improper reassignment of a case to a new judge—one court has explained the importance of raising a timely challenge to the administrative judge's action:

{¶ 26} "[A]ny party objecting to a reassignment must raise that objection at the first opportunity to do so. If the party has knowledge of the transfer with sufficient time to object before the new judge takes any action, that party waives any objection to the transfer by failing to raise that issue on the record before the action is taken. If the party first learns about the transfer after action is taken by the new judge, the party waives any objection to the transfer by failing to raise that issue within a reasonable time thereafter." *Berger v. Berger* (1981), 3 Ohio App.3d 125, 131, 3 OBR 141, 443 N.E.2d 1375.

{¶ 27} Though no document listed on the official docket for the Ross case appears to have memorialized the decision of the Summit County judges to recuse themselves in early 2001, Judge Cirigliano surely knew in March 2001 of that recusal, for he knew that I had turned first to a Stark County judge, and then to Judge Cirigliano himself—a Lorain County resident—to preside over the Ross retrial. Judge Adams would not have asked for either of those visiting-judge appointments had any Summit County judges been willing to handle the case. In short, the Summit County judges' voluntary recusal was evident to the parties and to Judge Cirigliano long before Judge Cirigliano challenged just weeks ago the March 16, 2001 appointment of the special prosecutor.

{¶ 28} Also, the March 16, 2001 order signed by Judge Adams and his Summit County colleagues was the most recent paper in the court file when Judge Cirigliano took over the case on March 23, 2001. Any objection to the previous week's order could have been raised and addressed right away, but instead Judge Cirigliano has waited three years to bring up the issue, and he has done so only when attorneys from the special prosecutor's office have asked that he be removed from the case.

{¶ 29} Given that Judge Adams and his colleagues acted on Prosecuting Attorney Walsh's motion on March 16, 2001, with the full knowledge and apparent concurrence of Judge Reinbold, given that Judge Reinbold had expressed his desire to step off the case several days earlier, given that the appointment of a special prosecutor could rightly be regarded as the kind of ministerial act that did not affect the substantive rights of the parties (and did not draw any objections from them), given that Judge Cirigliano had full notice if not full knowledge about the publicly filed order issued by the Summit County judges one week before his appointment to the case, and given that Judge Cirigliano never attempted to revisit the ruling on the appointment of the special prosecutor until three years after the order was issued, I reject Judge Cirigliano's claim that a defect in the appointment of the special prosecutor now invalidates the affidavit of disqualification filed by the assistant prosecuting attorneys from Special Prosecuting Attorney Mason's office.

*Second Issue: The Failure to Hold a Hearing on the Appointment of the Special Prosecutor*

{¶ 30} Judge Cirigliano argues next that before the general-division common pleas judges in Summit County appointed William Mason as a special prosecutor for the retrial of the case, they should have held a hearing into whether a special prosecutor was needed.

{¶ 31} A hearing is indeed required when an attorney for a party to a case does not want to be disqualified or when an attorney's law firm wishes to continue representation despite that attorney's conflict of interest. See, e.g., *Kala v. Aluminum Smelting & Refining Co., Inc.* (1998), 81 Ohio St.3d 1, 688 N.E.2d 258, syllabus; *State v. Condon*, 152 Ohio App.3d 629, 2003-Ohio-2335, 789 N.E.2d 696. See, also, *State v. Durbin* (App.1935), 20 Ohio Law Abs. 299, 1935 WL 1907 (where prosecuting attorney was neither notified nor given opportunity to be heard, appointment of special prosecutor was void); *State v. Wiles* (1998), 126 Ohio App.3d 71, 82, 83, 709 N.E.2d 898 (trial court should have held hearing and allowed the state to rebut criminal defendant's claim that entire prosecutor's office had to be disqualified when one assistant prosecutor had represented defendant in same case).

{¶ 32} Yet no such hearing is needed when the prosecuting attorney asks for and agrees to the appointment of a special prosecutor. The hearing described in the cases listed above is designed to give the prosecutor an opportunity to contest the appointment of a special prosecutor, or, more generally, to give attorneys the opportunity to argue that they can still represent a client when an opposing party moves to disqualify or to allow an attorney's law firm to continue to represent a client even though that one attorney in the firm or office cannot do so. This court has held that a hearing is necessary when a prosecuting attorney is the

subject of the investigation and has not consented to the appointment of other counsel. *State ex rel. Thomas v. Henderson* (1931), 123 Ohio St. 474, 478, 175 N.E. 865. But this court has explained that generally, "[t]he [trial] court has the discretion to appoint counsel to assist the prosecuting attorney in a pending criminal case whenever it is of the opinion that the public interest so requires. *There is no requirement that it conduct a prior hearing into the disqualification of the prosecuting attorney.*" (Emphasis added.) *State ex rel. Williams v. Zaleski* (1984), 12 Ohio St.3d 109, 113, 12 OBR 153, 465 N.E.2d 861.

{¶ 33} In *Williams,* as in this case, the prosecuting attorney had asked that a special prosecutor be appointed. See, also, *State ex rel. Stahl v. Webster* (App.1933), 15 Ohio Law Abs. 508, 1933 WL 1540 (where prosecuting attorney advised court that he did not wish to investigate or prosecute a particular case and that he consented to the appointment of other counsel, "no further notice of hearing to the prosecuting attorney was necessary").

{¶ 34} In this case, newly elected Summit County Prosecuting Attorney Sherri Bevan Walsh filed a motion in the trial court in February 2001, asking that a special prosecutor be appointed. The general-division common pleas judges granted that motion on March 16, 2001, and appointed William Mason to serve as special prosecutor. No hearing was necessary before the judges did so, and nothing about that appointment process undercuts the validity of Mason's actions since then.

### Third Issue: The Participation of Prosecuting Attorney Mason's Assistants in the Prosecution of the Case

{¶ 35} Finally, Judge Cirigliano argues that even if the appointment of William Mason was proper, the assistant prosecuting attorneys in Mason's office have no authority to appear on behalf of the government in the case, because the order appointing a special prosecutor mentions only Mason's name.

{¶ 36} There is little guidance in past court decisions on this point, but R.C. 309.06 does say that "[t]he prosecuting attorney may appoint any assistants * * * who are necessary for the proper performance of the duties of his office * * *." Those words are not directed toward a prosecuting attorney's service as a special prosecutor, but they do suggest that a prosecuting attorney is entitled to determine whether assistants are needed in his or her office and to make those appointments whenever necessary. Just as the Revised Code contemplates that prosecuting attorneys will hire and rely on assistant prosecuting attorneys to take on much of the day-to-day work in busy government offices, so I think it fair to say that the Summit County judges who appointed him expected Special Prosecuting Attorney Mason to decide how to staff the Ross case. He was appointed to represent the government in the case, and just as he decides which cases, if any, he himself will handle directly in Cuyahoga County, so he was

entitled by the March 16, 2001 Summit County judges' order to decide how best to staff the Ross case in Summit County.

{¶ 37} And as with the other concerns raised by Judge Cirigliano in his motion to dismiss, the long passage of time undercuts whatever weight his arguments might otherwise carry. Judge Cirigliano has presided over the Ross case since March 2001. During the three years since his appointment, the judge has never raised any concerns about the authority of the assistant prosecuting attorneys to appear on behalf of the government in the Ross case. The order appointing Special Prosecuting Attorney Mason was, as noted above, the most recent document in the case file when Judge Cirigliano was assigned to the case. Any concerns about that order's meaning could have been raised long ago. Instead, Judge Cirigliano has allowed assistant prosecuting attorneys from William Mason's office to appear at many court hearings and file many motions and memoranda. The judge has never questioned the assistant prosecuting attorneys' right to do so, and defense counsel has never objected, either.

{¶ 38} For those reasons, I disagree with Judge Cirigliano's third argument in his motion to dismiss the pending affidavit of disqualification.

{¶ 39} I am mindful that the " 'constitutional and statutory responsibility of the Chief Justice in ruling on an affidavit of disqualification is limited to determining whether a judge in a pending case has a bias, prejudice, or other disqualifying interest that mandates the judge's disqualification from that case.' " *In re Disqualification of Griffin*, 101 Ohio St.3d 1219, 2003-Ohio-7356, 803 N.E.2d 820, ¶ 9, quoting *In re Disqualification of Kate* (1999), 88 Ohio St.3d 1208, 1209, 723 N.E.2d 1098. The arguments that Judge Cirigliano has raised in his motion to dismiss do not touch on the kind of bias-and-prejudice inquiry that I must ultimately conduct in this and any other case in which an affidavit of disqualification has been filed. I have nonetheless carefully reviewed the merits of the judge's arguments in order to resolve the serious concerns that his motion raises about the validity of the special-prosecutor appointment process in the Ross case.

{¶ 40} For the reasons explained above, the motion to dismiss is denied.