STATE EMPLOYMENT RELATIONS BOARD et al., Appellees,

v.

SPRINGFIELD LOCAL SCHOOL DISTRICT BOARD
OF EDUCATION et al., Appellants.

[Cite as *State Emp. Relations Bd. v. Springfield Local School
Dist. Bd. of Edn.* (1995), 104 Ohio App.3d 191.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17012.

Decided June 7, 1995.

*Sue Pohler,* Chairperson, State Employment Relations Board; *Betty D. Montgomery,* Attorney General, *Helen Carroll* and *Vincent T. Lombardo,* Assistant Attorneys General, Labor Relations Section, for appellee SERB.

*Stephen.H. Dodd,* for appellee Ohio Association of Public School Employees, Local 530.

*Michael J. Angelo,* for appellants.

REECE, Judge.

This case was certified to this court for review by the State Employment Relations Board ("SERB"). We affirm the judgment of SERB.

I

The Springfield Local School District Board of Education ("board") employed the law firm of Johnson, Balazs & Angelo ("JBA") in the firm's professional capacity. Gary Johnson, an attorney and partner with JBA, conducted labor negotiations on behalf of the board. Michael Angelo, also an attorney and partner with JBA, provided litigation services to the board.

On February 15, 1994, SERB issued a complaint against the board and a notice of a hearing for unfair labor practices. Michael Hall, a hearing officer with SERB, contacted Johnson to inquire about the scheduling of the hearing. Johnson informed Hall that he would not be representing the board. Johnson told Hall that Angelo would represent the board because it was possible that he (Johnson) would testify as a witness on behalf of the board.

Hall then contacted Angelo. Hall discussed with Angelo the possibility of JBA's withdrawing its representation of the board because of the potential conflict of having an attorney of JBA act as witness on the board's behalf. Angelo told Hall that he was not sure whether Johnson would have to testify. Angelo indicated that he would have to depose another witness adverse to the

board in order to make a final determination. After taking the deposition, Angelo informed Hall that Johnson would testify on the board's behalf.

On April 22, 1994, Hall ordered JBA to show cause why it should not be disqualified from representing the board. The basis of the order was DR 5–102(A) of Ohio's Code of Professional Responsibility. The rule generally requires a law firm that is already representing a client to withdraw its representation of that client if a lawyer of the firm will testify as a witness on behalf of the client. Hall conducted a hearing and recommended to SERB the disqualification of JBA.

SERB adopted the recommendation of Hall. In its opinion, SERB recognized that attorneys must abide by the Disciplinary Rules contained in the Code of Professional Responsibility. Moreover, SERB reasoned that it possessed the power to disqualify JBA under its authority to regulate the practice before it pursuant to R.C. 4117.02(H)(7). SERB determined that Johnson's testimony was essential to the board's case because his testimony would address "substantial, controverted and relevant issues" and that no other witness could testify to those issues. Furthermore, SERB found that JBA could not demonstrate that the board would endure a "substantial hardship" under DR 5–101(B)(4) on account of JBA's disqualification. Therefore, SERB ordered JBA disqualified. Furthermore, because SERB found that its decision involved a substantial controversy which was a matter of "public or great general interest," it certified its decision to this court, pursuant to R.C. 4117.02(L), for review.

## II

The board asserts three assignments of error. It contends that SERB improperly disqualified JBA because (1) SERB lacked the authority to order the disqualification; (2) SERB abused its discretion by ordering the disqualification; and (3) even if SERB possessed the authority to disqualify JBA, SERB mistakenly found that JBA did not meet the DR 5–101(B)(4) exception.

## A

The first two assignments of error center around the issue of whether SERB had the authority to disqualify the firm. Thus, we address them together.

The starting point of our analysis is, quite naturally, the Code of Professional Responsibility. According to the Preface of the Code, the Disciplinary Rules contained in the code are mandatory and "state the minimum level of conduct below which no lawyer can fall * * *." According to DR 5–102(A):

"If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that he or a lawyer in his firm ought to be called as a witness on behalf of his client, he shall withdraw from the conduct of the trial

and his firm, if any, shall not continue representation in the trial, except that he may continue the representation and he or a lawyer in his firm may testify in the circumstances enumerated in DR 5–101(B)(1) through (4)."

The rationale for DR 5–102(A) is found in EC 5–9, which states:

"Occasionally a lawyer is called upon to decide in a particular case whether he will be a witness or an advocate. If a lawyer is both counsel and witness, he becomes more easily impeachable for interest and thus may be a less effective witness. Conversely, the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case. An advocate who becomes a witness is in the unseemly and ineffective position of arguing his own credibility. The roles of an advocate and of a witness are inconsistent; the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively."

Generally, a court has the authority to regulate the practice of attorneys who appear before it and to ensure that attorneys follow the rules of ethics. *Royal Indemn. Co. v. J.C. Penney Co.* (1986), 27 Ohio St.3d 31, 33–34, 27 OBR 447, 448–449, 501 N.E.2d 617, 619–620. While SERB is not a court of law, it does, nevertheless, possess the power to regulate the practice of those persons who appear before it. According to R.C. 4117.02(H)(7), SERB has the power to "establish standards of persons who practice before it." Furthermore, SERB has the power to adopt rules and procedures and to "exercise other powers appropriate to carry out [its function]." R.C. 4117.02(H)(8). Under its power to adopt rules and procedures, SERB has promulgated an administrative regulation which grants hearing officers the authority to "exclude any person for improper conduct." Ohio Adm.Code 4117–1–11(A)(9). Thus, SERB possesses the authority to regulate the practice and procedure governing those persons who represent parties before SERB, and, consequently, it possesses the authority to disqualify a lawyer.

In support of this determination, we find the authority of *Brown v. Dist. of Columbia Bd. of Zoning Adjustment* (App.D.C.1980), 413 A.2d 1276, to be persuasive. In *Brown,* the Board of Zoning Appeals ("BOZA") determined that it did not have the authority to disqualify a lawyer based on the lawyer's apparent conflict of interest. The court of appeals reversed. The court of appeals held that although BOZA was an administrative agency, it possessed the inherent authority to disqualify a lawyer. *Id.* at 1284. The court of appeals reasoned that BOZA derived this authority from administrative rules which empowered its presiding officer to " 'regulate the course of the hearing' and to 'take any other action authorized by these rules or necessary under these rules.' " *Id.* at 1279. The court of appeals concluded that BOZA's authority to disqualify a lawyer was necessary to "protect the integrity of its own hearings, and to

implement the public policy of deterring conflict of interest." *Id.* at 1282. Like BOZA in *Brown*, SERB in this case, based on its authority to regulate the practice and procedures occurring before it, possesses the authority to disqualify an attorney and can do so based on DR 5–102(A).

■ The board further argues that to allow SERB to enforce the Disciplinary Rules will create an inequity. Specifically, a person who is not a lawyer may represent a party appearing before SERB. Ohio Adm.Code 4117–1–12. Because a nonlawyer would not be bound by the Disciplinary Rules, the board argues that a lawyer representative having to follow the Disciplinary Rules is placed at a disadvantage because of the additional rules the lawyer must follow. We do not agree. As previously stated, SERB has the authority to regulate the practice before it and to exclude anyone for improper conduct. R.C. 4117.02(H)(7) and Ohio Adm.Code 4117–1–11(A)(9). These rules can equalize any disparity that may occur between a lawyer and nonlawyer representative. For example, SEP could exclude a nonlawyer representative from appearing before it if that representative were certain to testify on behalf of its client. Thus, SERB could exercise its authority to ensure such equanimity.

Moreover, *Brown* again is illustrative. In that case, the court of appeals recognized that nonlawyers could represent parties before BOZA. 413 A.2d at 1279. Nevertheless, BOZA maintained the authority to disqualify lawyers under the applicable Disciplinary Rules, since it had the authority to regulate its own practice. Likewise, because SERB has the authority to regulate its practice, it has the authority to disqualify a lawyer.

Furthermore, Johnson, Angelo and JBA did not shed their lawyer's clothes simply by representing the board before SERB. There is no dispute that JBA was representing the board in its professional legal capacity before SERB. As such, their representation was governed by the Disciplinary Rules. Presumably, JBA was aware of this. To prohibit SERB, therefore, from enforcing the Disciplinary Rules would allow any attorney practicing law before SERB to circumvent his or her ethical obligations.

■ The board also argues that even if SERB possessed the authority to enforce the Disciplinary Rules, it could only do so under its rulemaking authority and not its adjudicative authority. However, an agency's decision to use rule-making or adjudication to resolve disputes lies within the discretion of the agency. *Hamilton Cty. Bd. of Mental Retardation & Dev. Disabilities v. Professionals Guild of Ohio* (1989), 46 Ohio St.3d 147, 545 N.E.2d 1260, paragraph two of the syllabus. Thus, SERB's decision to resolve this issue by adjudication was within its discretion.

Accordingly, the first two assignments of error are overruled.

## B

■ The board next contends that even if SERB possesses the authority to enforce DR 5–102(A), JBA fell within the DR 5–101(B)(4) exception to DR 5–102(A). DR 5–101(B)(4) allows a lawyer to testify "[a]s to any matter, if refusal would work a substantial hardship on the client because of the distinctive value of the lawyer or his firm as counsel in the particular case." The board contends that JBA's disqualification would impose a substantial hardship upon it.

DR 5–101(B)(4) is read very narrowly by courts. See Guttenberg & Snyder, The Law of Professional Responsibility in Ohio (1992) 289–290, Section 10.7. The central issue in determining a substantial hardship is the expertise of the client's present lawyer. *Mentor Lagoons, Inc. v. Teague* (1991), 71 Ohio App.3d 719, 725, 595 N.E.2d 392, 395–396. The present lawyer must demonstrate special knowledge of an area of the law. *Id.* "The fact that [present] counsel may have experience and is knowledgeable in an area of the law does not establish that other competent counsel cannot be employed." *Id.* at 725–726, 595 N.E.2d at 396. Furthermore, a substantial hardship does not involve increased expenses associated with the hiring of a new lawyer. *Id.* at 725, 595 N.E.2d at 395–396.

In this case, the board argues that JBA possessed special knowledge sufficient to establish that the board would endure a substantial hardship if disqualification occurred. The lawyer must produce evidence of substantial hardship in order to meet the exception. *Id.* Furthermore, any "doubts should be resolved in favor of the lawyer testifying and against his becoming or continuing as an advocate." EC 5–10. SERB determined that disqualification would not constitute a substantial hardship but only cause the board an inconvenience. Upon review of the record, JBA did not sufficiently demonstrate that a substantial hardship would occur. Thus, viewing the *Teague* standard through the guideline of EC 5–10 leads to the determination that SERB properly disqualified JBA from representing the board.

Accordingly, the third assignment of error is overruled.

## III

All of the assignments of error are overruled. The decision of the State Employment Relations Board is affirmed.

*Judgment accordingly.*

BAIRD, P.J., and SLABY, J., concur.