[Cite as *NexGen Energy Partners, L.L.C. v. Reflecting Blue Technologies, Inc.*, 2017-Ohio-5855.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

NEXGEN ENERGY PARTNERS, LLC,      :      **O P I N I O N**
et al.,

           Plaintiffs-Appellants,      :

                                  **CASE NO. 2016-A-0050**

        - vs -      :

REFLECTING BLUE      :
TECHNOLOGIES, INC., et al.,
                       :

           Defendants-Appellees.

Civil Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CV 0266.

Judgment: Affirmed.

*John R. Conley, Matthew C. O'Connell* and *James M. Popson,* Sutter O'Connell Co., 1301 East Ninth Street, 3600 Erieview Tower, Cleveland, OH 44114 (For Plaintiff-Appellant NexGen Energy Partners, LLC); *Lawrence E. Sutter, John R. Conley, Matthew C. O'Connell* and *James M. Popson,* Sutter O'Connell Co., 1301 East Ninth Street, 3600 Erieview Tower, Cleveland, OH 44114 (For Plaintiff-Appellant Conneaut Schools Wind, LLC).

*David P. Bertsch,* Stark & Knoll Co., L.P.A., 3475 Ridgewood Road, Akron, OH 44313 (For Appellees Reflecting Blue Technologies, Inc.; Elecon Engineering Co., Ltd.; Brian Larson; and Venkata Adusumilli).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellants, NexGen Energy Partners, LLC and Conneaut Schools Wind, LLC, appeal from the July 28, 2016 judgment of the Ashtabula County Court of Common Pleas, granting appellees', Reflecting Blue Technologies, Inc., Elecon

Engineering Co., Ltd., Brian Larson, and Venkata Adusumilli, motion to disqualify appellants' counsel, the law firm of Sutter O'Connell Co.[1] At issue is whether a law firm can avoid a conflict of interest by screening an attorney in its firm who switched sides after having substantial responsibility for representing an adverse party in the same action. For the reasons stated, we find the trial court did not abuse its discretion in disqualifying appellants' counsel. Accordingly, we affirm.

{¶2} The underlying dispute involves the purchase of three wind turbines by appellants from appellees. Appellee Elecon, the manufacturer, is a company based in India. Appellee Reflecting Blue, the distributor, is an American company based in Nevada.

{¶3} On March 21, 2011, Attorney Christopher Ernst with the law firm of Brickler and Eckler filed an action asserting a number of claims on behalf of appellants against appellees.[2] Appellants claimed the turbines were defective and inoperable. Appellants alleged breach of warranties and contractual obligations, fraud, misrepresentation, and quality and performance of the products.

{¶4} The law firm of Brzytwa, Quick and McCrystal and Attorney Robert Cahill, a member of that firm and licensed to practice law in the state of Ohio, were hired to represent appellees. Attorney Matthew Girardi, licensed to practice law in the state of California, with an office in Los Angeles, had contacts with appellees and also acted as

---

1. Appellant NexGen entered into a multi-year contract with the Conneaut Board of Education to erect and operate a wind turbine at Conneaut Middle School in exchange for an agreement by the Board to purchase all electric power generated by the turbine. Appellant Conneaut Schools Wind was established as a special purpose entity which was to own and operate the turbine as a NexGen subsidiary.

2. Attorney Ernst later withdrew as appellants' counsel and was replaced by Sutter O'Connell in 2015.

2

counsel for appellees. Attorney Girardi, however, was not licensed to practice law in the state of Ohio.

{¶5} After consulting with Attorney Girardi, Attorney Cahill filed an answer on their behalf. Attorney Cahill signed pleadings as counsel for appellees. The trial court deemed Attorney Cahill as lead counsel for appellees.[3] Attorney Cahill was privy to a substantial amount of confidential information from appellees as well as from Attorney Girardi.

{¶6} Attorney Cahill also appeared as counsel on additional pleadings for appellees including a third party complaint, a motion to dismiss appellee Elecon, an answer to appellants' amended complaint with counterclaim, and a motion for leave to plead on behalf of Elecon. Attorney Cahill used confidential information to prepare pleadings, attend a hearing, and address discovery issues.

{¶7} Specifically, Attorney Cahill's representation included, inter alia: conferring with Attorney Girardi and the parties about the case; reviewing contract and specifications of NexGen's order; reviewing, revising, preparing, and drafting pleadings and discovery; researching case law; receiving documents; reviewing Attorney Girardi's notes and conferring with him regarding discovery and case strategy; reviewing and emailing appellee Brian Larson; reviewing and responding to emails from appellants'

---

3. Appellants stress, however, that Attorney Cahill was local counsel and California attorney Matthew Girardi was lead counsel even though he was not licensed to practice law in Ohio. We note that although the term "local counsel" at one time may have meant less responsibility on the part of that attorney, modern day practice has invalidated that prior meaning as all counsel signing pleadings and appearing in a case are fully accountable to the court and their clients. *See Gould v. Mitsui Mining & Smelting Co.*, 738 F.Supp. 1121, 1125 (N.D.Ohio 1990). Attorney Girardi later withdrew in 2014.

3

counsel; preparing for and attending a hearing; and traveling to Ashtabula County and Conneaut, Ohio.[4]

{¶8} Thereafter, in February 2012, Attorney Cahill filed a motion to withdraw. However, he continued to represent appellees as their counsel of record until the trial court granted his motion in April and Attorney David Bertsch, with the law firm of Stark & Knoll Co., L.P.A., entered an appearance as new counsel. Attorney Cahill's representation of appellees lasted about ten-and-a-half months. At the time of his withdrawal, Attorney Cahill had billed appellees $33,916 for legal services rendered.

{¶9} In September 2015, the law firm of Brzytwa, Quick and McCrystal, of which Attorney Cahill was still a member, merged with Sutter O'Connell, which was then and is now counsel of record for appellants. Thus, Attorney Cahill is now a member of Sutter O'Connell. Sutter O'Connell did not notify defense counsel before or after Attorney Cahill joined the firm. Rather, in October 2015, defense counsel independently learned of the information and after making inquiry, appellees received written notice of the merger.

{¶10} On May 3, 2016, appellees filed a motion to disqualify Sutter O'Connell. Appellants opposed the motion arguing that Attorney Cahill did not have substantial responsibility in the matter and that he had been properly screened when he joined Sutter O'Connell. Appellants also argued that appellees' delay in raising this issue was unduly prejudicial to appellants because the parties were prepared to try the case with

---

4. During the period that Attorney Cahill was representing appellees as their counsel of record, appellee Elecon experienced a fire at its India facility in August 2011. Its records regarding the turbines manufactured, sold, and shipped to appellee Reflecting Blue were lost in the fire. However, copies of much of the destroyed documentation were produced in discovery. Sutter O'Connell raised issues regarding spoliation and discovery sanctions but later dismissed those claims.

4

Sutter O'Connell as counsel in March 2016, two months prior to the filing of the motion to disqualify. An evidentiary hearing was held on June 30, 2016.

{¶11} On July 28, 2016, the trial court granted appellees' motion to disqualify. The court found that Attorney Cahill had a substantial responsibility in the representation of appellees in this lawsuit and by later becoming a member of appellants' counsel's law firm, Sutter O'Connell, all members of Sutter O'Connell must be disqualified from further representation of appellants in this matter. Appellants filed a timely appeal and assert the following assignment of error:

{¶12} "The Trial Court Abused Its Discretion in Disqualifying Plaintiffs' Counsel."

{¶13} Under its sole assignment of error, appellants present five issues:

{¶14} "1. What is the proper standard of review on a Motion to Disqualify Counsel?

{¶15} "2. Did the trial court arbitrarily fail to recognize and apply the second prong of Ohio's two part test for disqualification of counsel?

{¶16} "3. Did the trial court abuse its discretion in determining that Attorney Cahill had substantial responsibility for the representation of Defendants?

{¶17} "4. Did Defendants use the Motion to Disqualify Plaintiffs' counsel as a procedural weapon forbidden under the rules of professional conduct?

{¶18} "5. Did the trial court abuse its discretion in determining Defendants' Motion to Disqualify was untimely?"

{¶19} Appellants' issues are interrelated as they all center around the allegation that the trial court abused its discretion in disqualifying Sutter O'Connell. For ease of discussion, we will address them together.

{¶20} A trial court has wide discretion in the consideration of a motion to disqualify counsel. *In re Smith*, 11th Dist. Ashtabula Nos. 2005-A-0048 and 2005-A-0056, 2007-Ohio-893, ¶63, citing *Spivey v. Bender*, 77 Ohio App.3d 17, 22 (6th Dist.1991). When reviewing a trial court's decision to disqualify counsel, appellate courts apply an abuse of discretion standard. *In re Smith* at ¶63, citing *Centimark Corp. v. Brown Sprinkler Serv., Inc.*, 85 Ohio App.3d 485, 487 (11th Dist.1993).

{¶21} Regarding this standard, we recall the term "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto,* 112 Ohio St. 667, 676–678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland,* 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.)

{¶22} The parties cite to *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St.3d 1 (1998). In that case, the Ohio Supreme Court held the following:

{¶23} "In ruling on a motion for disqualification of either an individual (primary disqualification) or the entire firm (imputed disqualification) when an attorney has left a law firm and joined a firm representing the opposing party, a court must hold an evidentiary hearing and issue findings of fact using a three-part analysis:

{¶24} "(1) Is there a substantial relationship between the matter at issue and the matter of the former firm's prior representation;

{¶25} "(2) If there is a substantial relationship between these matters, is the presumption of shared confidences within the former firm rebutted by evidence that the attorney had no personal contact with or knowledge of the related matter; and

6

**{¶26}** "(3) If the attorney did have personal contact with or knowledge of the related matter, did the new law firm erect adequate and timely screens to rebut a presumption of shared confidences with the new firm so as to avoid imputed disqualification?" *Id.* at syllabus.

**{¶27}** "'(D)isqualification * * * is a drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Kala, supra,* at 6. New realities in modern legal practice require trial courts to engage in a "'balancing of interests'" in considering motions to disqualify. *Id.* at 7.

**{¶28}** We note that *Kala* has been superseded by the Ohio Rules of Professional Conduct. *See Dickens v. J & E Custom Homes, Inc.*, 187 Ohio App.3d 627, 2010-Ohio-2634 (2d Dist.) Since the Rules were adopted, a law firm can no longer avoid a conflict of interest by erecting a Chinese wall to quarantine an attorney in its firm who switched sides after having substantial responsibility for representing an adverse party in the same action.

**{¶29}** In *Dickens*, the Second District held:

**{¶30}** "It is undisputed that Engling is personally disqualified pursuant to Prof.Cond.R. 1.9(a) from representing J & E in this action, because his former association with Jenks, Pyper & Oxley involved that firm's representation of Duane and Norma Dickens in the matter that their litigation with J & E involves. Prof.Cond.R. 1.10(c) imputes the basis for an attorney's personal disqualification to a firm with which the disqualified attorney subsequently becomes associated if the attorney had a 'substantial responsibility' for the representation that the attorney or his former firm provided. The trial court found that Engling had had a substantial responsibility for the

7

representation that Jenks, Pyper & Oxley had provided the Dickenses, and on that basis disqualified Freund, Freeze & Arnold from representing J & E in the action the Dickenses had filed.

{¶31} "* * *

{¶32} "Prof.Cond.R. 1.10 was promulgated by the Supreme Court of Ohio pursuant to the authority conferred on that court by Section 2(B)(1)(g), Article IV of the Ohio Constitution, to regulate 'the discipline of lawyers, and all other matters related to the practice of law.' The Official Comment to Prof.Cond.R. 1.10(c) indicates that it is consistent with the holding in *Kala v. Aluminum Smelting & Refining Co., Inc.* (1998), 81 Ohio St.3d 1 * * * (* * *) concerning disqualification of a law firm when one of its members is personally disqualified because of a former representation. The specific standards for disqualification in Prof.Cond.R. 1.10 nevertheless supersede those announced in *Kala,* which are slightly different." *Dickens, supra,* at ¶2, 4.

{¶33} Prof.Cond.R. 1.10, "Imputation of conflicts of interest: general rule" provides in part:

{¶34} "(a) While lawyers are associated in a *firm*, none of them shall represent a client when the lawyer *knows* or *reasonably should know* that any one of them practicing alone would be prohibited from doing so by Rule 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the *firm*.

{¶35} "* * *

8

**{¶36}** "(c) When a lawyer has had *substantial* responsibility in a matter for a former client and becomes associated with a new *firm*, no lawyer in the new *firm* shall *knowingly* represent, in the same matter, a person whose interests are materially adverse to the interests of the former client.

**{¶37}** "(d) In circumstances other than those covered by Rule 1.10(c), when a lawyer becomes associated with a new *firm*, no lawyer in the new *firm* shall *knowingly* represent a person in a matter in which the lawyer is personally disqualified under Rule 1.9 unless both of the following apply:

**{¶38}** "(1) the new *firm* timely *screens* the personally disqualified lawyer from any participation in the matter and that lawyer is apportioned no part of the fee from that matter;

**{¶39}** "(2) *written* notice is given as soon as practicable to any affected former client." (Emphasis sic.)

**{¶40}** Prof.Cond.R. 1.10, "Official Comment" (5A) and (5B) state in part:

**{¶41}** "(5A) * * * Division (c) imputes the conflict of a lawyer who has had substantial responsibility in a matter to all lawyers in a law firm to which the lawyer moves and prohibits the new law firm from assuming or continuing the representation of a client in the same matter if the client's interests are materially adverse to those of the former client. * * *

**{¶42}** "(5B) Screening is not effective to avoid imputed disqualification of other lawyers in the firm if the personally disqualified lawyer had substantial responsibility for representing the former client in the same matter in which the lawyer's new firm

9

represents an adversary of the former client. A lawyer who was sole or lead counsel for a former client in a matter had substantial responsibility for the matter. * * *"

{¶43} The foregoing rule, Prof.Cond.R. 1.10, mentions and includes Prof.Cond.R. 1.9, "Duties to former clients," which states in part:

{¶44} "(a) Unless the former client gives *informed consent, confirmed in writing*, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a *substantially related matter* in which that person's interests are materially adverse to the interests of the former client." (Emphasis sic.)

{¶45} Prof.Cond.R. 1.9(a) clearly prohibited Attorney Cahill from representing appellants as he neither sought nor received written consent from appellees, who he previously represented as counsel of record in this same matter. "[A] court can properly assume that confidences were disclosed to the attorney on the subject matter of the representation during the course of the former representation, so long as the former representation was substantially related * * * rendering proof of prejudice unnecessary." *Douglass v. Priddy*, 11th Dist. Geauga No. 2013-G-3172, 2014-Ohio-2881, ¶27.

{¶46} In addition, Prof.Cond.R. 1.10(c) mandates disqualification of a firm from representing a party in which an attorney who joins the firm had a substantial responsibility in representing an adverse party in the same lawsuit regardless of screening and written notice measures.

{¶47} The record reveals that Attorney Cahill was privy to a substantial amount of confidential information during his ten-and-a-half month representation of his former clients, appellees, as their counsel in this lawsuit. As stated, Attorney Cahill's representation included, inter alia: conferring with Attorney Girardi and the parties about

10

the case; reviewing contract and specifications of NexGen's order; reviewing, revising, preparing, and drafting pleadings and discovery; researching case law; receiving documents; reviewing Attorney Girardi's notes and conferring with him regarding discovery and case strategy; reviewing and emailing appellee Brian Larson; reviewing and responding to emails from appellants' counsel; preparing for and attending a hearing; and traveling to Ashtabula County and Conneaut, Ohio.

{¶48} Regarding confidential information, the trial court, in its July 28, 2016 judgment, found the following:

{¶49} "The Court further finds that during Attorney Cahill's representation of the Defendants [appellees], he did legal research on pending motions and other legal research, and he gave legal and procedural advice to Attorney Girardi, who had the major contact with the Defendants [appellees].  Trial strategy was offered by Attorney Cahill, and he was involved in determining legal defenses.  Confidential information was shared by Attorney Girardi, and Attorney Cahill has had direct contact through emails and telephone conversations with Defendant [appellee] Brian Larson."

{¶50} Thus, after Attorney Cahill joined another firm which merged with Sutter O'Connell in September 2015, Sutter O'Connell was accordingly disqualified from continuing to represent appellants.  Based on the evidence in the record, there is an appearance of impropriety.  Attorney Cahill was privy to confidential information and had substantial responsibility for previously representing appellees, his former clients, as counsel in this same action.  *See* Prof.Cond.R. 1.10(c).

{¶51} Appellants emphasize that California attorney Matthew Girardi was lead counsel during the representation of appellees and that Attorney Cahill was merely local

11

counsel. However, even assuming that appellants are correct, this is a distinction without a difference. *See Gould, supra,* at 1125; *see also Litigation Mgt., Inc. v. Bourgeois*, 182 Ohio App.3d 742, 2009-Ohio-2266, ¶26 (8th Dist.) (holding the fact that one counsel was the primary or lead counsel "does not preclude a finding that other attorneys had 'substantial responsibility' for the matter.") Thus, whether Attorney Girardi was lead counsel or co-counsel does not change the fact that Attorney Cahill also had a substantial responsibility for representing appellees in this lawsuit. *See* Prof.Cond.R. 1.10 and Official Comments (5A) and (5B).

**{¶52}** We further note that the trial court, in its July 28, 2016 judgment, found the following:

**{¶53}** "On the issue of the timeliness of Plaintiffs' [appellants'] counsel's written notice to Defendants [appellees] of the merger of the two law firms, the Court finds 1 ½ months is timely.

**{¶54}** "On the issue of whether the Defendants' [appellees'] delay of 6 ½ months in filing its Motion to Disqualify is untimely, the Court finds the time period is not excessive. The Court also finds the Defendants [appellees] did not directly or indirectly waive the conflict of interest issue.

**{¶55}** "Lastly, one of the main reasons Ohio has adopted the Rules of Professional Conduct is to avoid the appearance of impropriety and unfairness. In this case, where an attorney is relied on by the Defendants [appellees] to provide legal and procedural advice, and later becomes a member of the Plaintiffs' [appellants'] law firm, the appearance of injustice arises. The public's acceptance of the rule of law must be earned, and the legal system would collapse without public support.

**{¶56}** "Rule 1.10(c) is a mandatory rule. * * *"

**{¶57}** This court finds that the trial court did not abuse its discretion in determining that appellees did not take an excessive amount of time in filing their disqualification motion such that appellees could be deemed to have waived the conflict of interest because appellants were allegedly unduly prejudiced by the delay.

**{¶58}** Appellants failed to establish any excessive delay in the filing of the motion to disqualify. The record reveals that appellees' delay of six-and-a-half months is not excessive, was not a result of gamesmanship, and was not retaliatory in nature. The timeliness of a motion to disqualify counsel is not a fixed concept. *Stanley v. Bobeck*, 8th Dist. Cuyahoga No. 92630, 2009-Ohio-5696, ¶9 (no abuse of discretion in disqualifying counsel where there was a nine month delay), quoting *Sarbey v. Natl. City Bank, Akron*, 66 Ohio App.3d 18, 28 (1990); *In re E.M.J.*, 9th Dist. Medina No. 15CA0098-M, 2017-Ohio-1090, ¶24-25 (no waiver of a conflict of interest despite the one-year delay in filing the motion for disqualification).

**{¶59}** Furthermore, appellants claim financial hardship in having to incur fees for new counsel and maintain that the most important factor in determining the timeliness of a motion to disqualify is prejudice to the responding party caused by the delay. Appellants, however, presented no evidence for the trial court to consider on this point. Even if appellants had presented evidence as to additional fees as a result of any delay in filing the motion to disqualify, such evidence does not constitute undue prejudice. *See 155 N. High, Ltd. v. Cincinnati Ins. Co.*, 72 Ohio St.3d 423, 429 (1995) ("'distinctive value resulting in substantial hardship'" requires more than a showing of mere financial hardship or long-time familiarity with the case. There must be some proof of specialized

expertise."); *State Employment Rel. Bd. v. Springfield Local School Dist. Bd. of Ed.*, 104 Ohio App.3d 191, 196 (9th Dist.1995) ("a substantial hardship does not involve increased expenses associated with the hiring of a new lawyer."); *A.B.B. Sanitec West, Inc. v. Weinsten*, 8th Dist. Cuyahoga No. 88258, 2007-Ohio-2116, ¶25. Appellants' contention that appellees used the motion to disqualify appellants' counsel as a "procedural weapon" is not supported by the facts contained in the record.

{¶60} Nothing in this decision should be read to question the integrity or ethics of any of the law firms or attorneys involved in this matter. However, we find that the trial court did not abuse its discretion in disqualifying Sutter O'Connell from continuing to represent appellants due to Attorney Cahill's, a member of Sutter O'Connell, substantial responsibility in his prior representation of appellees as their counsel of record in this same lawsuit during which time he was privy to confidential information. Collectively, appellants' issues have no merit.

{¶61} For the foregoing reasons, appellants' sole assignment of error is not well-taken. The judgment of the Ashtabula County Court of Common Pleas is affirmed.

CYNTHIA WESTCOTT RICE, P.J.,

DIANE V. GRENDELL, J.,

concur.