[Cite as *State v. Knoefel*, 2019-Ohio-267.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2017-L-150** |
| KEVIN D. KNOEFEL, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000558.

Judgment: Affirmed.

*Charles E. Coulson,* Lake County Prosecutor, and *Teri R. Daniel,* Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Megan M. Patituce* and *Joseph C. Patituce,* Patituce & Associates, LLC, 26777 Lorain Road, Suite 1, North Olmsted, OH 44070 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Kevin Knoefel, appeals the Judgment Entries of the Lake County Court of Common Pleas, denying his Motion to Disqualify the Lake County Prosecutor's Office, Motion for Post Conviction Relief, and Motion for New Trial. The issues before this court are whether a prosecutor's office must be disqualified from prosecuting a case after hiring a former attorney of the firm representing the defendant where the attorney has no involvement with the case at the prosecutor's office; whether a defendant is entitled to a new trial based on impeachment testimony from fellow inmates of the State's leading witness that she lied at trial to implicate the defendant; and whether a defendant is entitled to post-conviction relief based on ineffective assistance of counsel

where trial counsel's alleged deficiencies are not supported by the evidentiary materials submitted with the petition. For the following reasons, we affirm the decision of the court below.

{¶2} In August 2014, following a jury trial in Lake County, Knoefel was sentenced to an aggregate life term of imprisonment with parole eligibility after thirty years for Complicity to Aggravated Murder and six counts of Sexual Battery. Knoefel's convictions were affirmed on direct appeal. *State v. Knoefel*, 11th Dist. Lake No. 2014-L-088, 2015-Ohio-5207.

{¶3} On January 28, 2016, Knoefel filed a Motion for Post Conviction Relief on the grounds that his "right to effective assistance of counsel * * * was violated in this matter by multiple inexcusable errors caused by Trial Counsel" and the identification of a witness "who is believed to be willing to testify that Sabrina Zunich has expressly, and repeatedly, stated that Kevin Knoefel was not involved with the planning, discussion, or execution of the murder in this matter."

{¶4} On June 13, 2016, Knoefel filed a *Supplemental* Motion for Post Conviction Relief, identifying additional witnesses "housed at the Lake County Jail while [Zunich] was waiting for trial" to whom she spoke about the murder.

{¶5} On February 15, 2017, Knoefel filed an Amended Motion for Post Conviction Relief.

{¶6} On May 19, 2017, Knoefel filed a Supplemental Motion for Post Conviction Relief, requesting an evidentiary hearing, and a Motion for New Trial on the grounds of "newly discovered exculpatory evidence which could not have been produced at trial."

{¶7} On July 6, 2017, Knoefel filed a Supplemental Motion for Post Conviction Relief and Supplement to Motion for a New Trial.

2

{¶8} On August 30, 2017, Knoefel filed the Expert Report of Attorney Richard Koblentz in support of Motion for Post Conviction Relief and Motion for New Trial.

{¶9} On September 14, 2017, the State filed a Response to the Amended and Supplemental Motions for Post-Conviction Relief and a Response to the Motion and Supplement to Motion for New Trial.

{¶10} On September 21, 2017, Knoefel filed Replies in support of his Motions.

{¶11} On October 6, 2017, the State filed Supplemental Responses in opposition to Knoefel's Motions.

{¶12} On October 13, 2017, Knoefel filed a Motion to Disqualify the Lake County Prosecutor's Office on the grounds that the "Prosecutor's Office has quite literally hired one of Kevin Knoefel's defense attorneys while this matter is actively pending before this Honorable Court."

{¶13} On October 16, 2017, the State filed a Brief in Opposition to the Motion to Disqualify. Also on this date, an evidentiary hearing was held on the Motion to Disqualify.

{¶14} On October 27, 2017, the trial court, in separate Judgment Entries, ruled on Knoefel's Motion to Disqualify and on the Motions for Post Conviction Relief and New Trial. All Motions were denied.

{¶15} On November 15, 2017, Knoefel filed a Notice of Appeal. On appeal, he raises the following assignments of error:

{¶16} "[1.] Whether the trial court's denial of Defendant's Motion to Disqualify was an abuse of discretion."

{¶17} "[2.] Whether the trial court's denial of Defendant's Motion for a New Trial pursuant to Crim.R. 33 without hearing was an abuse of discretion."

3

**{¶18}** "[3.] Whether the trial court's denial of Defendant's Motion for Post Conviction Relief pursuant to R.C. 2953.21 without hearing was an abuse of discretion."

**{¶19}** In the first assignment of error, Knoefel challenges the denial of his Motion to Disqualify the Lake County Prosecutor's Office.

**{¶20}** When reviewing a motion for disqualification based on conflict of interest directed against the office of the prosecutor, Ohio courts have consistently held that there must be evidence of an actual breach of confidence resulting in prejudice to the defendant. *State v. Bachman*, 5th Dist. Stark No. 2014CA00198, 2015-Ohio-2054, ¶ 24 (cases cited); *State v. Richardson*, 2014-Ohio-3541, 17 N.E.3d 644, ¶ 32 (3d Dist.) (cases cited); *State v. Goff*, 4th Dist. Lawrence No. 11CA20, 2013-Ohio-42, ¶ 61 (cases cited); *State v. White*, 8th Dist. Cuyahoga No. 82066, 2004-Ohio-5200, ¶ 25-26 (cases cited); *State v. Waggaman*, 9th Dist. Medina No. 96CA0078, 1997 WL 537680, *5-6 (Aug. 20, 1997) (cases cited). Concomitantly, it has been held that the mere appearance of impropriety is insufficient to merit disqualification of the office of the prosecutor.[1]

**{¶21}** The trial court summarized the testimony presented at the disqualification hearing as follows:

> Adam Downing, Esq.,] was an associate attorney with the Firm [of Patituce & Associates LLC] from December 5, 2016 to September 15, 2017. Downing interviewed for a position in the Juvenile Division of the Prosecutor's Office on September 8, 2017 and September 11, 2017; he was

---

1. The one exception to this authority appears to be this court's decision in *State v. Wiles*, 126 Ohio App.3d 71, 709 N.E.2d 898 (11th Dist.1998), in which this court held that, when faced with a motion for disqualification, "the trial court must hold a hearing and allow the state the opportunity to rebut that presumption [of shared confidences]." *Id.* at 83. The *Wiles* decision, while sound with respect to the necessity of holding a hearing when a conflict of interest is alleged, *see In re Disqualification of Cirigliano*, 105 Ohio St.3d 1223, 1229, 826 N.E.2d 287 (2004), is not binding on this court. Neither of the other two judges on the panel concurred in the opinion. One concurred in judgment only and the other concurred separately on the grounds that she was "not convinced that when a government attorney is involved, there is the same presumption that applies when there is a private attorney." *Wiles* at 85 (Christley, J., concurring separately). This concurring judge further noted that, "in footnote 3 of *Kala,* the Supreme Court of Ohio acknowledges the American Bar Association Model Rules of Professional Conduct as well as the distinction that the American Bar Association makes between government lawyers and private lawyers in matters of disqualification." *Id.*

4

offered the position and accepted it on September 11, 2017. Downing informed the Firm of his resignation and new position on September 12, 2017, and the Firm informed Downing on September 13, 2017 that his last day would be September 15, 2017. Megan Patituce, a partner in the Firm, also informed Downing that the Firm would likely file a motion to disqualify.

Downing's first day at the Prosecutor's Office was September 18, 2017. Charles E. Coulson, Esq. ("Coulson"), the Lake County Prosecuting Attorney, sent an email to all attorneys and staff in the Prosecutor's Office on September 18, 2017 at 8:59 a.m. attaching a Screening Memorandum spelling out the policy in place to screen Downing "from participating in matters of former clients of his and/or the law firm of Patituce & Associates, LLC," including – but not limited to – the Knoefel matter ("Screening Memo"). The Screening Memo specifically prohibits both Downing and the other employees of the Prosecutor's office from discussing the Knoefel matter.

Joseph C. Patituce, Esq. ("Patituce"), the Managing Partner of the Firm, claims that he notified Coulson of the potential conflict regarding Downing by leaving him a voice mail message on September 26, 2017. However, the Prosecutor's Office has no record of a phone call from Patituce during that entire week, and neither Coulson, the Office Administrator, nor the main switchboard has a voice mail mailbox. On October 4, 2017, Patituce faxed a letter to Coulson raising the potential conflict. On October 5, 2017, Coulson placed Downing on administrative leave pending resolution of this issue. On October 10, 2017, the parties raised the issue with the court.

During the hearing, Laura Nielsen ("Nielsen") – the Office Administrator – testified that the Prosecutor's Office employs 33 attorneys in five divisions, and that the offices of attorneys assigned to the Juvenile Division are in the Juvenile Justice Center, which is across the street from the other divisions. Terri Daniel, Esq., who has primary responsibility for the Knoefel matter on the State's behalf, testified that she has never met or spoken to Downing, and has never received an email or text from Downing. Daniel testified that the hard-copy Knoefel file is under her control, and that the only documents related to the Knoefel matter that are kept electronically where they could be accessed by other attorneys are publicly-available filings.

Downing testified that he had minimal involvement with the Knoefel matter while employed at the Firm, and that his involvement was ministerial. Specifically, Downing filed documents with the Clerk of Courts three times because he lives in Lake County, and once retrieved public documents from the Clerk of Courts regarding potential witness Brian Allen ("Allen") and provided them to Megan Patituce. Defendant did not produce any evidence that Downing performed any other work for Defendant. Downing was never assigned to the Knoefel matter, never did any legal research or drafting,

never entered an appearance, never met Defendant, and never provided any analysis or strategy. Although Downing did not check the Firm's time-keeping records prior to his departure to determine how much time (if any) he billed to the Knoefel matter, Defendant did not produce any time-keeping records showing that Downing billed any time to the Knoefel matter.

Downing agreed that he was copied on all emails sent to "attorney@patitucelaw.com", and that those emails would have included attorney work-product regarding the Knoefel matter, but testified that he usually did not read them because he was not assigned to the case. Downing admitted to being curious about the Knoefel matter, but only discussed the Knoefel matter with Patituce once, for approximately 15 minutes, and did not offer any strategy or analysis.

Before he left the Firm, Downing deleted a number of emails sent to the "attorney@patitucelaw.com" address and to his individual Firm address, and also inserted a removable flashdrive into his Firm laptop. Downing testified that all of the emails he deleted still exist in other Firm recipients' inboxes, or in the Firm's shared drives, and that he inserted the flashdrive to make sure that anything he worked on from home was also in the Firm's network drive. Defendant did not produce any evidence that Downing deleted documents that are not otherwise available to the Firm.

Downing testified that during his interview Coulson told him that he did not want to discuss the Knoefel matter at all, and that there would be a screening process in place. He has never met Terri Daniel or Lisa Neroda from the Criminal Division of the Prosecutor's Office, and he has only met Karen Kowall (Chief Assistant, Criminal Division) due to an unrelated juvenile matter. He has not reviewed or attempted to access the Knoefel file.

* * *

Here, the court finds that (1) Downing did not have any substantive responsibility for or involvement in the Knoefel matter while at the Firm, (2) the screening mechanism is sufficient, (3) the size of the prosecutor's office is sufficient to insulate Downing from any involvement in the Knoefel matter, and (4) Downing has had no involvement in the State's case and no communications with the Prosecutor's Office regarding the State's case. The only other prejudice Defendant alleges is delay, but Defendant argues that this will occur even if the court grants his motion to disqualify.

In addition, the court notes that the State filed its responses to Defendant's motion for new trial under Crim.R. 33(A)(6) and Defendant's petition for post-conviction relief pursuant to R.C. 2953.21 on September 14, 2017, while Downing was still with the Firm. There is no evidence before the court that Downing assisted in drafting those responses or provided information to the State to use in those responses before he started his

6

employment with the Prosecutor's Office. Accordingly, the court finds no actual prejudice to Defendant.

(Footnotes omitted.)

{¶22} Knoefel argues that the evidence does not substantiate the trial court's conclusion that Downing did not have any substantive responsibility for or involvement in the Knoefel matter while at Patituce & Associates. He notes that Downing did possess confidential information by virtue of being copied on emails sent to the "attorney@patitucelaw.com" email address; did conduct research on a potential witness; did acknowledge his curiosity about the firm's "big case"; did have at least one conversation about the case; and did delete materials from his firm-owned computer prior to his departure. He further notes that Knoefel's case has not concluded simply because the State filed its final responsive pleading. Appellant's brief at 15-16.

{¶23} None of Knoefel's claims regarding the evidence amount to a colorable argument that there has been an actual breach of confidence resulting in prejudice. The fact remains uncontroverted that Downing has had no involvement with Knoefel's case since leaving Patituce & Associates and there is no evidence that Downing was indispensable to Patituce in handling Knoefel's case. Without evidence of an actual breach of confidence and resulting prejudice, the issue of whether Downing had substantive responsibility for the Knoefel case while at Patituce & Associates is immaterial as to whether the prosecutor's office should have been disqualified.[2] As the cases cited

---

2. The relevant Rule from the Ohio Rules of Professional Conduct provides: "a lawyer currently serving as a public officer or employee * * * shall not * * * participate in a matter in which the lawyer participated personally and *substantially* while in private practice or nongovernmental employment, unless the appropriate government agency gives its *informed consent, confirmed in writing* * * *." Rule 1.11(d)(2)(i). It follows that, even if Downing was personally and substantially involved in the Knoefel matter while at Patituce & Associates, there has been no violation of the Rule as long as he has not participated in the matter as a public officer or employee. We point out that comment [2] to Rule 1.11 provides: "division (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers."

above assert, there is no presumption of prejudice. *White*, 2004-Ohio-5200, at ¶ 26 ("[p]rejudice will not be presumed by an appellate court where none is demonstrated"); *also In re Disqualification of Carr*, 105 Ohio St.3d 1233, 2004-Ohio-7357, 826 N.E.2d 294, ¶ 15 ("[a]s long as the government attorney whose conflict of interest prevents him or her from handling a particular matter is effectively screened from any participation in the case, other attorneys in the office can, in most circumstances, continue to handle the case").

{¶24} Knoefel relies on two cases in support of disqualification. The first, *NexGen Energy Partners, LLC v. Reflecting Blue Technologies, Inc.*, 2017-Ohio-5855, 94 N.E.3d 924 (11th Dist.), is inapposite inasmuch as it did not involve a prosecutor's office or other government office and this court merely affirmed the lower court's decision, in the exercise of its "wide discretion," to disqualify a law firm from representing a client based on the conflict of interest of one of its members. *Id.* at ¶ 60.

{¶25} Knoefel also relies on *State v. Cooper*, 63 Ohio Misc. 1, 409 N.E.2d 1070 (C.P.1980), a trial court decision from Hancock County in which the court ruled that "[t]he Prosecuting Attorney of Hancock County, as well as his assistants in his public capacity and his partners and associates in his private capacity are relieved from the prosecution of these cases." *Id.* at 7. The court so ruled not because of any breach of confidence (in fact, the court specifically found there had been no improper communication), but because "of the overriding requirement that the public must be able to maintain the right to believe in the total integrity of the Bar as a whole." *Id.* at 6. We find the *Cooper* decision to be neither binding nor persuasive as the decision of a common pleas court. It is inconsistent with subsequent case law as well as the Rules of Professional Conduct.

{¶26} In sum, the issue of disqualification turns on Knoefel's ability to demonstrate "an actual breach of confidence resulting in prejudice to the defendant." The trial court's

8

conclusion that there was no such breach and/or prejudice is supported by competent and credible evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. Accordingly, the first assignment of error is without merit.

{¶27} In the second assignment of error, Knoefel challenges the denial of his Motion for a New Trial.

{¶28} As to a motion for new trial based on newly discovered evidence, Criminal Rule 33 provides:

> A new trial may be granted on motion of the defendant * * * [w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

Crim.R. 33(A)(6).

{¶29} "To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Hawkins*, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993), citing *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), syllabus.

{¶30} "The allowance of a motion for a new trial on the grounds of newly discovered evidence is within the competence and discretion of the trial judge; and in the

9

absence of a clear showing of abuse such decision will not be disturbed." *State v. Williams*, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), paragraph two of the syllabus; *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990), paragraph one of the syllabus.

{¶31} In support of his Motion for New Trial, Knoefel submitted the following evidence:

{¶32} Affidavits by James Amacher were submitted, who claimed to have spoken with Zunich "personally while [an inmate] at the Lake County Jail." According to Amacher's affidavits: Zunich murdered Lisa Knoefel because "she was mad at [her] regarding a situation with a person Sabrina wanted to date that Lisa * * * did not approve of"; "planned the murder * * * with her friend Autumn [Pavlik] and another individual, not Kevin Knoefel"; and "decided to blame Kevin Knoefel for planning the murder for different reasons."

{¶33} A videotaped interview with and affidavit of Kari Saunders were submitted, who was "in a relationship" and "in love with" Zunich while they were inmates at the Lake County Jail. In the interview which took place on December 16, 2014, Saunders claimed that Zunich planned the murder with Pavlik and an ex-boyfriend, Ed Lanning. Lanning wanted Kevin Knoefel "out of Sabrina's life" because Kevin "took Sabrina from him." The statements that Zunich ascribed to Knoefel at trial, such as about twisting the knife and making the crime look like a robbery, were actually made by Lanning. Saunders said she did not come forward with the information sooner because she was in love with Zunich, did not want to hurt her, and thought she (Zunich) was "going to get this major time off her sentence which she really didn't even get."

{¶34} In her affidavit, Saunders claimed that Zunich told her "she decided to kill Lisa on her own after learning Lisa may be pregnant by Kevin" and that Zunich "lied to

10

have Kevin locked up" because "if she couldn't have him, no one would" and "because he wasn't there for her during her incarceration."

{¶35} The affidavit of Megan Boyer was submitted, who claimed to have spoken "frequently" with Zunich while at the Lake County Jail "from approximately May 23, 2014 until about May 8, 2015." According to Boyer's affidavit: Zunich "was mad at Lisa Knoefel" because she "wanted to date an older boy that [she] did not approve of"; "planned the murder with * * * with her friend Autumn and a male friend whom she had been dating"; and "decided to blame Kevin Knoefel" because, "if she did not * * *[,] she would spend her whole life in prison."

{¶36} In response, the State submitted another, subsequent affidavit by Amacher and the transcripts of interviews with Amacher, Saunders, and Boyer. Amacher recanted his prior statements in both his interview and affidavit, in particular: he denied that he communicated with Zunich personally, but, rather, they communicated by letters sent through a third person; she "never mentioned anyone else who was involved in the murder"; they "did not discuss the details of the murder"; and the content of their letters (which have not survived) "largely included the topics of sex and life in jail."

{¶37} The trial court decided not to question the credibility of the affidavits submitted by Knoefel but denied Knoefel's motion on the grounds that the newly discovered evidence would not have changed the result at trial:

> The affidavits do not disclose a strong probability that this testimony would change the result at trial. The jury heard from Zunich herself that she initially denied any memory of the night of Lisa's murder, and that she told two different stories to police investigators. Further, Defendant admits that the State brought out on direct that Zunich was a liar, and that his Trial Counsel attempted to impeach her using her mental health issues. Defendant has not established a strong probability that, if a jury found Zunich to be "more" of a liar than she already admitted to being on the stand, it would find that Defendant had no involvement in Lisa's murder. [FN. Defendant has submitted

11

no evidence to support a new trial on the sexual battery charges.] Moreover, Defendant completely ignores the rest of the evidence presented at trial. *See State v. Knoefel*, 11th Dist. No. 2014-L-088, 2015-Ohio-5207, ¶146 ("We note that there was a great abundance of circumstantial evidence corroborating the essential aspects of Zunich's testimony.").

{¶38} Bearing in mind the deference owed to the lower court's determination with respect to granting a new trial, we find no abuse of discretion in the trial court's conclusion. The statements of the three Lake County Jail inmates constitute impeachment evidence which is largely cumulative with itself and the evidence presented at trial even without considering the credibility issues with the statements. *State v. West*, 4th Dist. Scioto No. 17CA3810, 2018-Ohio-1784, ¶ 15 ("'new evidence' [that] would merely impeach the testimony of a codefendant who did testify at trial and/or contradict the previous statements that Breon Kelly had given to the officers" was insufficient to render the denial of a motion for new trial an abuse of discretion).

{¶39} The only evidentiary value of the inmate affidavits would be to impeach Zunich's trial testimony; they do not, strictly speaking, exonerate Knoefel. As noted by the trial court, Zunich's trial testimony was already impeached by her prior inconsistent statements to the police, six-month period of silence regarding Knoefel's involvement, and by the testimony of several witnesses that Zunich was a habitual liar. This point was duly impressed upon the jury by trial counsel:

> [To find Knoefel guilty beyond a reasonable doubt] you would have to believe the testimony of Sabrina Zunich who is an admitted liar who admitted that she has mental illness, who admitted that she manipulates people. This is one of the greatest jobs ever. Manipulation, I've seen she manipulated the State of Ohio into giving her a dramatically reduced sentence * * *. Somewhere along the line she figures out I got to come up with something otherwise * * * I will never get out of prison * * *.
>
> * * *

12

> So look what we have in this case, the things that the State of Ohio expects you to believe in order for you to convict Kevin Knoefel. They want you to believe that an eighteen year old foster child with a serious history of mental illness, acting out, anger, medications, failure to follow rules, who admittedly hated her mother conspired with my client to murder his wife over life insurance proceeds and lead a new life. You have to believe that. You can't believe it without believing Sabrina Zunich.

{¶40} Even as impeachment evidence, the affidavits are of limited value. *State v. Jalowiec*, 2015-Ohio-5042, 52 N.E.3d 244, ¶ 38 (9th Dist.) ("[e]vidence that impeaches or contradicts the evidence at trial is not excluded from consideration per se, but the character of that evidence is relevant to whether a different result is a strong probability"). Admittedly, they contradict Zunich's trial testimony with respect to Knoefel's involvement in the murder. In some respects, however, they are consistent with Zunich's trial testimony. For example, Zunich testified that she did feel abandoned by and resentful toward Knoefel and these feelings, at least in part, motivated her to implicate him in the murder. *Knoefel*, 2015-Ohio-5207, at ¶ 64. In other respects, the statements in the affidavits conflict with direct evidence presented at trial. The statements in the affidavits indicate that Lisa Knoefel disapproved of Zunich's desire to date an older boy. At trial, Zunich's probation officer (Melissa Jevack) testified that Knoefel (not the wife) contacted her in an agitated state about Zunich's wanting to date an older boy and asked her to discuss the matter with Zunich. When told she would have to abide by Knoefel's rules, Zunich became distressed and began to cry. *Id.* at ¶ 70. Arguably Lisa Knoefel could have also disapproved of Zunich dating an older boy, but the trial evidence strongly suggests that her more immediate concern was Zunich's relationship with her husband rather than with older boys. *Id.* at ¶ 118.

{¶41} Knoefel claims that the affidavits "provide evidence of other actors involved in the murder of Lisa Knoefel," such as Autumn Pavlik and Edward Lanning. In fact, the

13

statements are not admissible as evidence of Lanning's involvement and nothing in the trial record suggests his involvement.[3] Pavlik's rather dubious participation in planning the murder and subsequent efforts to implicate Knoefel were thoroughly presented at trial. Thus, the trial court properly noted the circumstantial evidence at trial corroborating Zunich's testimony in court in its decision to deny the Motion for New Trial.

**{¶42}** The second assignment of error is without merit.

**{¶43}** In the third assignment of error, Knoefel challenges the denial of his Motion for Post Conviction Relief.

**{¶44}** "Any person who has been convicted of a criminal offense * * * who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. " R.C. 2953.21(A)(1)(a).

**{¶45}** "Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript." R.C. 2953.21(D).

---

3. In an affidavit attached to the State's Response to the Motion for New Trial, Lanning testified that he and Zunich "never had any conversations about a plan to murder Lisa Knoefel."

14

**{¶46}** "Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues even if a direct appeal of the case is pending." R.C. 2953.21(F).

**{¶47}** "[A] trial court's decision regarding a postconviction petition filed pursuant to R.C. 2953.21 will be upheld absent an abuse of discretion when the trial court's finding is supported by competent and credible evidence." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 60; *State v. Clark*, 11th Dist. Trumbull No. 2017-T-0081, 2018-Ohio-794, ¶ 6 (purely legal issues, however, are reviewed de novo).

**{¶48}** "In a petition for post-conviction relief, which asserts ineffective assistance of counsel, the petitioner bears the initial burden to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and that the defense was prejudiced by counsel's ineffectiveness." *State v. Jackson*, 64 Ohio St.2d 107, 413 N.E.2d 819 (1980), syllabus. Specifically, a petitioner must show "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Martin*, 151 Ohio St.3d 470, 2017-Ohio-7556, 90 N.E.3d 857, ¶ 48.

**{¶49}** Knoefel's Motion for Post Conviction Relief raised multiple claims regarding the constitutional ineffectiveness of trial counsel. Several of these claims are based on trial counsel's failure to call and/or prepare witnesses for trial, including: Knoefel, Dr. Libbie Stansifer, Joseph Sutton, Krisanne Sutton, and Carrie Ward.

**{¶50}** Collectively, the trial court dismissed these claims on the grounds of res judicata inasmuch as Knoefel was represented by his present counsel, not trial counsel, on appeal and, therefore, could have raised these issues on direct appeal. Alternatively,

15

the trial court found that Knoefel failed to provide "any *evidence* of what these witnesses would have said at trial" so as to establish "sufficient operative facts" entitling him to relief: "the court cannot find a reasonable probability that the trial result would have been different with these witnesses testifying when the court does not know what their testimony would be or even who some of these witnesses would be." Specific applications of the court's holding are discussed below.

{¶51} Knoefel maintained that trial counsel denied him the fundamental constitutional right of testifying on his own behalf. According to Knoefel's affidavit, he desired to testify in his own defense but was told by counsel: "it was [their] choice who got on the witness stand."

{¶52} "Generally, the defendant's right to testify is regarded both as a fundamental and a personal right that is waivable only by an accused." *State v. Bey*, 85 Ohio St.3d 487, 499, 709 N.E.2d 484 (1999) (cases cited). However, "a trial court is not *required* to conduct an inquiry with the defendant concerning the decision whether to testify in his defense." *Id.* As a practical matter, then, the right to testify on one's own behalf cannot be vindicated on direct appeal unless the defendant has asserted it personally so that some evidence of its denial is in the record. *See, e.g., State v. Thomas*, 97 Ohio St.3d 309, 2002-Ohio-6624, 779 N.E.2d 1017, ¶ 43 (claim that defendant was denied his right to testify on his own behalf was rejected where "[n]othing in the record suggests that defendant wanted to testify and was denied the opportunity to do so").[4] These

---

4. The dilemma has been illustrated thus: "[T]he defendant complains that he was denied the right to testify because the decision that he not testify was made by his counsel without the understanding [or] knowledge of the defendant. If this be a ground for error it is not a ground which is portrayed by the record. It is, perhaps, available in appropriate cases as a ground for relief under the post conviction remedy provisions of R.C. 2953.21, but it is not a ground for reversal on direct appeal when the record of trial is silent as to its existence." *State v. Gibson*, 3d Dist. Paulding No. 11-77-4, 1978 WL 215725, *3 (Jan. 10, 1978).

considerations make the application of res judicata to Knoefel's claim of ignorance of the right on account of counsel's misrepresentations inequitable.

**{¶53}** Knoefel, nevertheless, was required to make some demonstration that he was prejudiced by the denial of this right. *Ortega v. O'Leary*, 843 F.2d 258, 262 (7th Cir.1988) ("the *Chapman* standard [for constitutional violations] applies when a petitioner has been denied the right to testify"); *Skeens v. Haskins*, 4 Fed.Appx. 236, 238 (6th Cir.2001) ("the state appellate court properly applied the harmless-error test of *Chapman* to Skeens's claim" that he was denied his right to testify on his own behalf). Here, Knoefel's affidavit gave no indication of what the nature of the testimony he would have given or argument as to how it might have affected the outcome of the trial.

**{¶54}** Res judicata more properly applies to Knoefel's claim that trial counsel was deficient for not calling Dr. Stansifer, one of Zunich's treating physicians, to testify. In the words of Knoefel's expert in the field of ineffective assistance of counsel, Attorney Richard Koblentz, trial counsel "failed to investigate and discover Miss Zunich's full medical records containing her mental health diagnosis and violent past which would have corroborated their argument that Miss Zunich was a 'psycho.'" This argument was raised and rejected in Knoefel's direct appeal. *Knoefel*, 2015-Ohio-5207, at ¶ 155. Moreover, evidence of Zunich's past psychotic episode was before the jury as well as her current psychological diagnoses, which did not include psychosis. *Id.* at ¶ 34 ("Zunich was removed from the grandmother's home due to * * * psychological (heard voices, anger), substance abuse, and behavioral issues (lying and being manipulative")), 50 ("[w]hen placed in the Knoefels' home, Zunich was taking nine different medications for bipolar disorder, ADHD, and insomnia" and had previously "heard voices as a side-effect of

medicines she was taking at the time"), and 155 ("evidence of her current diagnoses, bipolar, ADHD, and PTSD, were already in evidence").[5]

{¶55} Krisanne Sutton is Knoefel's sister and Joseph is her husband. Carrie Ward was Lisa Knoefel's co-worker. Krisanne testified at trial regarding the emotional impact the murder had on Knoefel. Her affidavit submitted in support of the Amended Motion for Post Conviction Relief states, without further detail, that she had "information and evidence that would directly contradict material portions of the testimony of Sabrina Zunich, David Strunk, and other witnesses." The expert report of Attorney Koblentz indicates that Krisanne referred Knoefel to a therapist following the murder out of concern for his well-being.[6] Ward testified at trial regarding the distress Zunich's presence in the Knoefels' home was causing, particularly with regard for Lisa's children. Ward did not submit an affidavit although Attorney Koblentz' report suggests that Ward warned Lisa about Zunich and that she did not believe Knoefel and Zunich were having a sexual relationship. Joseph did not testify at trial. In an affidavit, Joseph stated that he had "information and evidence that would directly contradict material portions of the testimony of Sabrina Zunich and David Strunk" but that trial counsel refused to meet with him or call him as a witness.

{¶56} We agree with the trial court that the claims raised with respect to these witnesses fail to demonstrate substantive grounds for relief. Even accepting Attorney Koblenz' report as evidence of how the witnesses could have testified, the suggested evidence would have been consistent with, if not cumulative to, the evidence presented

---

5. In a progress note of October 19, 2012 (about a month before the murder), attached to the State's Response to the Amended Motion for Post-Conviction Relief, Dr. Stansifer records that Zunich "is functioning well on her present medication regimen" and "[i]mminent risk for suicide or violence is low."
6. Knoefel claims that the "Koblentz Report was submitted as evidence." Appellant's brief at 30. While it is evidence of Koblentz' opinions, it is not evidence of what Krisanne Sutton or other witnesses would have proffered as testimony.

18

at trial. Several witnesses (mandatory reporters) testified that they did not suspect a sexual relationship between Knoefel and Zunich; there was testimony that Knoefel was upset by his wife's murder; and Zunich testified that she was fully aware that Lisa wanted her out of the home.

**{¶57}** Knoefel raises additional arguments regarding the Amended Motion for Post Conviction Relief, such as the State's delay in turning over the video of the Saunders interview to defense counsel[7], that the trial court erred by not allowing Knoefel to depose his former trial counsel, that the court erred by canceling the hearing on the Motions, and that trial counsel did not possess the necessary experience and/or inclination to properly investigate Knoefel's case. As with Knoefel's other arguments, these arguments are not supported by credible instances of resulting prejudice.

**{¶58}** The third assignment of error is without merit.

**{¶59}** For the foregoing reasons, the Judgment Entries of the Lake County Court of Common Pleas, denying Knoefel's Motion to Disqualify the Lake County Prosecutor's Office, Motion for Post Conviction Relief, and Motion for New Trial are affirmed. Costs to be taxed against appellant.


COLLEEN MARY O'TOOLE, J., concurs,

CYNTHIA WESTCOTT RICE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

_____

7. The interview was conducted December 16, 2014, about four months after Knoefel's conviction and sentence. The video was attached to Knoefel's Supplemental Motion for Post Conviction Relief filed on May 19, 2017.

CYNTHIA WESTCOTT RICE, J., concurs in part and dissents in part, with a Concurring/Dissenting Opinion.

{¶60} I concur with the disposition of the first assignment of error upholding the trial court's denial of appellant's Motion to Disqualify. I also concur with the majority's disposition and analysis of the third assignment of error affirming the denial of appellant's Motion for Post Conviction Relief. I dissent and write separately to address the second assignment of error regarding the denial of the Motion for New Trial.

{¶61} The state's case was founded on the testimony of the codefendant, Sabrina Zunich, and extensive circumstantial evidence. In the initial appeal, this court noted "that there was a great abundance of circumstantial evidence corroborating the essential aspects of Zunich's testimony." *State v. Knoefel,* 11th Dist. No. 12014-L-088, 2015-Ohio-5207, ¶146.

{¶62} The record is replete with efforts the defense made to attack her credibility and establish her propensity to lie. In denying appellant's motion for new trial, the trial court relied on this in determining that the proposed newly discovered witness testimony where she admitted to falsely implicating the appellant in the murder was merely cumulative of former evidence. The trial court found that this evidence does not establish a strong probability that the outcome at trial would have been different. The trial court specifically found that the proposed testimony at a new trial would not establish "if a jury found Zunich to be 'more' of a liar than she already admitted to being on the stand, it would find that Defendant had no involvement in Lisa's murder."

{¶63} The majority concludes that the additional testimony is merely cumulative to former evidence and merely impeaches or contradicts Zunich's former testimony. This is where I disagree. Direct evidence of her motivations and plan to falsely implicate

20

appellant goes beyond what was available and offered at trial. Although defense counsel at trial argued that her motivation to testify against appellant was to obtain a lesser sentence, the fact that she made statements acknowledging she falsely implicated appellant in the conspiracy could have had an impact on the jury's assessment of her credibility. It's one thing to imply someone lied and yet another when they admit they lied. The weight of the admission could have resulted in a different outcome at trial.

{¶64} The appellant offered affidavits of multiple people who claimed Zunich had made up her testimony regarding appellant's involvement in the murder. The State also offered competing affidavits of the same people. In the war of the affidavits, it seems essential that a neutral party observe and evaluate the value of the proposed testimony.

{¶65} Based upon the foregoing points, I would hold the trial court acted fundamentally unreasonable in denying the motion for a new trial without a hearing. The direct evidence and affidavits were not merely cumulative and do not simply impeach or contradict evidence submitted at appellant's trial. Rather, they represent substantive new and direct evidence that Zunich actually lied. As such, the trial court abused its discretion in overruling appellant's motion without conducting a hearing to more carefully examine the substance of the evidence offered in support of the motion. In this respect, I would reverse the trial court's judgment and remand the matter for the trial court to conduct a hearing on the motion for a new trial as to the conspiracy and complicity to murder charges only.

{¶66} I consequently concur in part, and dissent in part from the majority opinion.